IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICANS FOR PROSPERITY FOUNDATION<br>1310 North Courthouse Road, Suite 700<br>Arlington, VA 22201,<br><br>      Plaintiff,<br><br>      v.<br><br>U.S. DEPARTMENT OF ENERGY<br>1000 Independence Avenue, S.W.<br>Washington, D.C. 20585; and<br><br>U.S. DEPARTMENT OF STATE<br>2201 C Street, N.W.<br>Washington, D.C. 20520,<br><br>      Defendants. | Civil Action No. 23-0206 |

# COMPLAINT

1. Plaintiff Americans for Prosperity Foundation ("AFPF") brings this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, requesting access to agency records maintained by Defendants United States Department of Energy ("Energy") and United States Department of State ("State").

2. AFPF seeks records concerning the Biden Administration's possible abuse of the Strategic Petroleum Reserve ("SPR"), potential export ban on crude oil or refined products, and its alleged efforts to request the Organization of Petroleum Exporting Countries ("OPEC") to hold production cuts until after the 2022 midterm elections.

3. Neither Energy nor State has issued a timely determination on AFPF's FOIA request nor have they produced the requested records.

4. The records at issue have significant value that serves the public interest insofar as they shine light on the Biden Administration's failure to embrace an "all-of-the-above" energy and regulatory policy that keeps energy affordable for all Americans.

## JURISDICTION AND VENUE

5. Jurisdiction is asserted pursuant to 28 U.S.C. § 1331 and 5 U.S.C. § 552(a)(4)(B).

6. Venue is proper pursuant to 28 U.S.C. § 1391(e) and 5 U.S.C. § 552(a)(4)(B).

## PARTIES

7. Plaintiff AFPF is a 501(c)(3) nonprofit organization committed to educating and training Americans to be courageous advocates for the ideas, principles, and policies of a free and open society. Among other things, AFPF believes it essential to expose politicization of America's strategic energy reserves and to work towards an energy-abundance policy that embraces our country's vast resources—both traditional oil and gas, as well as renewable and alternative sources. To this end, AFPF is investigating the Biden Administration's possible abuse of the SPR and alleged efforts to enact an oil and gas export ban. AFPF routinely files and litigates FOIA requests.

8. Defendants Energy and State are both agencies within the meaning of 5 U.S.C. § 552(f)(1). Defendants have possession, custody, and control of agency records to which AFPF seeks access and that are the subject of this Complaint.

## FACTS

**I.   The Biden Administration's Abuse of the Strategic Petroleum Reserve**

9. On October 26, 2022, thirteen Republican members of the U.S. House Committee on Oversight and Reform—led by Ranking Member James Comer (R-KY) and Subcommittee of Civil Rights and Civil Liberties Ranking Member Nancy Mace (R-SC)—sent a letter to the Department of Energy requesting documents about a potential oil and gas export ban, as well as

2

the Biden Administration's arguable abuse of the SPR.  *See* **Exhibit 1**; *see generally* Press Release, U.S. House of Rep. Comm. on Oversight & Accountability Republicans: Mace, Comer, Oversight Republicans Sound Alarm Over the Biden Administration's Plan to Ban Oil and Gas Exports (Oct. 27, 2022), *available at* https://oversight.house.gov/release/mace-comer-oversight-republicans-sound-alarm-over-the-biden-administrations-plan-to-ban-oil-and-gas-exports.

10. Specifically, the House GOP letter suggested the President was considering "restricting exports of refined petroleum productions" after having already "asked OPEC+ to delay production cuts" until December 2022.  Ex. 1.  The letter also detailed how the Administration was allegedly "further depleting the [SPR] ahead of the midterm elections" in order to "cover additional foreign fuel bans or price fluctuations[.]"  *Id.*

11. The possible abuse of the SPR and the threat of an export ban on gas and oil are topics of pressing public interest.  *See, e.g.*, *The Strategic Petroleum Reserve is for National Emergencies, Not Falling Poll Numbers*, Ams. for Prosperity, Oct. 19, 2022, https://americansforprosperity.org/the-strategic-petroleum-reserve-is-for-national-emergencies-not-falling-poll-numbers.

## II. AFPF's November 17, 2022 FOIA Request to Energy HQ

12. By letter, dated November 17, 2022, AFPF submitted a single-item FOIA request to Energy's FOIA Request Service Center seeking access to the following:

> All internal and external communications (e-mail, text, instant messaging, calendar items, etc.), including attachments (memos, guidance documents, directives, etc.), that contain the keywords:
>     a.    ("Strategic Petroleum Reserve" OR "SPR") AND ("election" OR "midterm")
>            [. . .]
>     b.    ("OPEC" OR "Saudi") AND ("election" OR "midterm") AND ("delay" OR "November" OR "December" OR "deal" OR "agreement" OR "understanding")
>            [. . .]

3

      c.      "Export" AND ("ban" OR "restrict") AND ("crude" OR "refined product" OR "diesel" OR "gas")
[. . .]
      d.      "Jones Act" AND ("New England" OR "Governor" OR "Waiver" OR "LNG" OR "diesel" OR "heating oil")
[. . .]

[and that were] [s]ent to or by the following [Energy] employees, including through any alias accounts:
      a.      Secretary Jennifer M. Granholm
      b.      Deputy Secretary David M. Turk
      c.      Chief of Staff Christopher Davis
      d.      Former Chief of Staff Tarak Shah
      e.      White House Liaison David Berrios
      f.      Former White House Liaison/Office of Clean Energy Demonstrations Caroline Grey

**Exhibit 2** (internal footnotes omitted).

13.    For Items 1(a) and 1(b), AFPF identified the relevant time period as "March 1, 2022 to the present." *Id.*

14.    For Items 1(c) and 1(d), AFPF identified the relevant time period as "June 1, 2022 to the present." *Id.*

15.    AFPF defined the term "record" as "any medium of information storage in the form and format maintained by the agency at the time of the request." *Id.* AFPF explained that "[i]f any portion of a 'record' . . . is responsive to [its] request, then [Energy] should process and disclose the record in its entirety." *Id.* Thus, "[i]f [Energy] consider[ed] a medium of information storage to contain multiple records that it believe[d] c[ould] be segmented on the basis of the subject-matter of scope of AFPF's request," it must process all potentially segmented records as responsive. *Id.*

16.    AFPF likewise explained that, as far as email chains were concerned, it sought "the entirety of any email chain, any portion of which contains an individual email message responsive to [its] request[.]" *Id.*

17. AFPF clarified it did not seek "daily news clippings or other mass mailings unless there is commentary related to them," and Energy could omit such records from the scope of the request. *Id.*

18. AFPF requested a public interest fee waiver and classification as a representative of the news media for fee purposes. *Id.*

19. By letter, dated November 22, 2022, Energy acknowledged it had received AFPF's FOIA request and assigned it tracking number HQ-2023-00209. **Exhibit 3**.

20. In the same letter, Energy granted AFPF's requests for a public interest fee waiver and treatment as a representative of the news media. *Id.*

21. In early January 2023, Energy contacted AFPF to schedule a phone call regarding AFPF's FOIA request. That call occurred on or about January 6, 2023. After the call, AFPF explained in an email that it "would appreciate it if the search . . . for e-mails and calendar items" were undertaken, while AFPF would "be narrowing [its] request for other forms of communications in the near future." **Exhibit 4**.

22. Several days later, Energy informed AFPF by email that the agency would add two additional custodians to its search. *Id.*; *see infra* ¶ 32.

23. Energy also sought confirmation that AFPF would consent to "us[ing] the date of [AFPF's] request as the end of the date range for the searches." AFPF provided its consent shortly thereafter. Ex. 4.

24. To date, Energy has not provided any further update on the processing of AFPF's FOIA request. The agency has neither issued a determination nor produced responsive records.

**III.     AFPF's November 17, 2022 FOIA Request to the SPR Project Management Office**

25.     By letter, dated November 17, 2022, AFPF submitted a second, near-identical FOIA request to Energy's SPR Project Management Office. This request, while employing the same keywords and identified time periods for the agency's search, only sought responsive records maintained by "Douglas MacIntyre, Thomas McGarry, or Paul Oosterling." **Exhibit 5**.

26.     AFPF again defined the term "record" as "any medium of information storage in the form and format maintained by the agency at the time of the request." *Id.* AFPF explained that "[i]f any portion of a 'record' . . . is responsive to [its] request, then [Energy] should process and disclose the record in its entirety." *Id.* Thus, "[i]f [Energy] consider[ed] a medium of information storage to contain multiple records that it believe[d] c[ould] be segmented on the basis of the subject-matter of scope of AFPF's request," it must process all potentially segmented records as responsive. *Id.*

27.     AFPF likewise explained that, as far as email chains were concerned, it sought "the entirety of any email chain, any portion of which contains an individual email message responsive to [its] request[.]" *Id.*

28.     AFPF clarified it did not seek "daily news clippings or other mass mailings unless there is commentary related to them," and Energy could omit such records from the scope of the request. *Id.*

29.     AFPF requested a public interest fee waiver and classification as a representative of the news media for fee purposes. *Id.*

30.     On the same day AFPF submitted its request, Energy provided an informal acknowledgement of receipt by email. *See* **Exhibit 6**. Energy advised AFPF that two of the identified record custodians—Douglas MacIntyre and Thomas McGarry—were "located at our

6

Program Office" but the SPR Project Management Office did not "have access to their accounts." *Id.*

31. By email, dated December 8, 2022, Energy further advised that the Office of Petroleum Reserves had "received [AFPF's] FOIA request" and would provide a further response through the departmental "FOIA Office." *Id.*

32. AFPF and Energy discussed the status of the searches for records under the custody of Messrs. MacIntyre and McGarry in early January 2023. *See supra* ¶ 22. Upon information and belief, these searches were consolidated with FOIA request HQ-2023-00209.

33. By email, dated December 9, 2022, Energy informed AFPF that it had "conducted a search on Paul Oosterling's emails," but the FOIA officer had "not had a chance to review the output yet." **Exhibit 7**.

34. By email, dated January 4, 2023, Energy provided a further update on the processing of AFPF's request. The agency explained the assigned FOIA officer had "reviewed the data set and compiled the responsive documents and did a cursory review." *Id.* Those records were sent for legal review. *See id.*

35. Energy has never provided AFPF with a formal acknowledgment letter that contains a tracking number for the November 17, 2022 FOIA request directed to the SPR Program Management Office. Energy also has not yet addressed AFPF's fee-related requests.

36. To date, Energy has not provided any further update on the processing of AFPF's FOIA request. The agency has neither issued a determination nor produced responsive records.

IV. **AFPF's November 17, 2022 FOIA Request to State**

37. By letter, dated November 17, 2022, AFPF submitted a FOIA request to State seeking access to the following:

7

> All internal and external communications (e-mail, text, instant messaging, calendar items, etc.), including attachments (memos, guidance documents, directives, etc.), sent to or by Special Presidential Coordinator for the Partnership for Global Infrastructure and Investment Amos Hochstein, including from any alias accounts, that contain the keywords:
>
> a. ("Strategic Petroleum Reserve" OR "SPR") AND ("election" OR "midterm")
> [. . .]
> b. ("OPEC" OR "Saudi") AND ("election" OR "midterm") AND ("delay" OR "November" OR "December" OR "deal" OR "agreement" OR "understanding")
> [. . .]
> c. "Export" AND ("ban" OR "restrict") AND ("crude" OR "refined product" OR "diesel" OR "gas")
> [. . .]
> d. "Jones Act" AND ("New England" OR "Governor" OR "Waiver" OR "LNG" OR "diesel" OR "heating oil")
> [. . .]

**Exhibit 8** (internal footnotes omitted).

38. For Items 1(a) and 1(b), AFPF identified the relevant time period as "March 1, 2022 to the present." *Id.*

39. For Items 1(c) and 1(d), AFPF identified the relevant time period as "June 1, 2022 to the present." *Id.*

40. AFPF defined the term "record" as "any medium of information storage in the form and format maintained by the agency at the time of the request." *Id.* AFPF explained that "[i]f any portion of a 'record' . . . is responsive to [its] request, then [State] should process and disclose the record in its entirety." *Id.* Thus, "[i]f [State] consider[ed] a medium of information storage to contain multiple records that it believe[d] c[ould] be segmented on the basis of the subject-matter of scope of AFPF's request," it must process all potentially segmented records as responsive. *Id.*

41. AFPF likewise explained that, as far as email chains were concerned, it sought "the entirety of any email chain, any portion of which contains an individual email message responsive to [its] request[.]"  *Id.*

42. AFPF clarified it did not seek "daily news clippings or other mass mailings unless there is commentary related to them," and State could omit such records from the scope of the request.  *Id.*

43. AFPF requested a public interest fee waiver and classification as a representative of the news media for fee purposes.  *Id.*

44. By email, dated November 23, 2022, State acknowledged it had received AFPF's FOIA request and assigned it tracking number F-2023-01915.  **Exhibit 9**.  The agency also advised that it had "placed [AFPF's request] in the complex processing track[.]"  *Id.*

45. State granted AFPF's requests for a public-interest fee waiver.  *Id.*

46. State indicated it was invoking "unusual circumstances" and would extend its statutory response deadline by another ten days due to "the need to search for and collect [the] requested records from other Department offices of Foreign Service posts."  *Id.*

47. To date, State has not provided any further update on the processing of AFPF's FOIA request.  The agency has neither issued a determination nor produced responsive records.

## COUNT I
### Violation of the FOIA: Failure to Comply with Statutory Requirements

48. AFPF repeats all of the above paragraphs.

49. The FOIA requires an agency to accept and process any request for access to agency records that (a) "reasonably describes such records," and (b) "is made in accordance with published rules stating the time, place, fees, . . . and procedures to be followed[.]"  5 U.S.C. § 552(a)(3)(A).

50. The FOIA also requires an agency to respond to a valid request within 20 business days or, in "unusual circumstances," within 30 business days. *Id.* § 552(a)(6)(A)–(B). If an agency requires additional time to process a request, the FOIA mandates it provide the requester with "an opportunity to arrange . . . an alternative time frame for processing the request[.]" *Id.* § 552(a)(6)(B)(ii).

51. AFPF's FOIA requests seek access to agency records maintained by Energy and State. Those requests reasonably describe the records sought and otherwise comply with the FOIA and applicable agency regulations.

52. Energy has failed to issue a determination on or promptly produce agency records responsive to two of the three FOIA requests at issue within the applicable statutory time limits.

53. State has failed to issue a determination on or promptly produce agency records responsive to one of the three FOIA requests at issue within the applicable statutory time limits.

54. Energy has also failed to comply with the FOIA because it never "arrange[d] . . . alternative time frame[s]" for responding to AFPF's requests and never actively invited AFPF to negotiate "alternative" response deadlines.

55. AFPF has exhausted its administrative remedies under 5 U.S.C. § 552(a)(6)(C).

**RELIEF REQUESTED**

WHEREFORE, Plaintiff AFPF respectfully requests and prays that this Court:

a. Order Defendants Energy and State to process AFPF's FOIA requests and issue determinations within 20 business days of the date of the Order;

b. Order Defendants promptly to produce all non-exempt agency records responsive to AFPF's FOIA requests;

c.  Maintain jurisdiction over this case until Defendants comply with the Order and, if applicable, adequately justify their treatment of all responsive records;

d.  Award AFPF its costs and reasonable attorney fees incurred here pursuant to 5 U.S.C. § 552(a)(4)(E); and

e.  Grant such other relief as the Court may deem just and proper.

Dated: January 25, 2023              Respectfully submitted,

*/s/ Ryan P. Mulvey*
Ryan P. Mulvey
D.C. Bar No. 1024362
Eric R. Bolinder
D.C. Bar No. 1028335

AMERICANS FOR PROSPERITY FOUNDATION
1310 North Courthouse Road, Suite 700
Arlington, VA 22201
Telephone: (571) 444-2841
rmulvey@afphq.org
ebolinder@afphq.org

*Counsel for Plaintiff*

11